Relson, J.,
delivered the opinion of the Court.
Judgment was rendered, by a justice, in favor of the plaintiff, on the 25th of August, 1866, for §111.39 debt, and for costs, in an action, of debt brought by warrant, upon a note. The cause was • removed into the Circuit Court of "Weak-ley county, by writs of certiorari and supersedeas, granted by the fiat of Chancellor Somers, bearing date 10th December, 1867. At the ensuing February Term, the petition was dismissed, for insufficiency, on plaintiff’s motion, and a procedendo awarded, directing the Justice to carry the judgment into execution. An execution having issued, a sec- *670 oncl petition for writs of certiorari and supersedeas was presented to Hon. John A. Kogers, judge of the sixteenth judicial circuit, who granted the same, 4th December, 1868. On the 13th October, 1869, the plaintiff entered a motion to dismiss the petition, which was overruled, and on the same day, a jury was impanelled “well and truly to try the issue 'joined,” and found in favor of the defendant. Judgment was, thereupon, rendered in his favor for costs, and from that judgment plaintiff prosecutes this appeal.
The writs of certiorari and supersedeas first issued were obtained by the defendant under the pauper oath, but, in the second application, bond and security were given as required by law. The inability of the petitioner to give bond and security until the time of filing his second petition, is the only cause assigned for his delay in filing the same. In other respects, the two petitions are, substantially, identical, and the matters presented in them, as well as the questions discussed in argument, will be briefly considered.
1. The inability of the petitioner to give security for the supersedeas is not a good reason for not applying for a certiorari to review the judgment. The Code, 3133, provides that no super-sedeas shall issue upon application in forma pau-peris without express order of the judge dispensing with security, made after notice of the application to the adverse party; but the certiorari, for the purpose of re-trying the cause upon its merits, *671 might have been prosecuted "by taking the pauper oath prescribed in section 8192. See, also, Code, sections 8128, 8132.
2. The statement in the petition, that the petitioner did not appeal because he was summoned to appear before the Justice on the-day of September, 1866, and that, by some mistake, the warrant was returned for trial on the 25th August, 1866, and he was not informed of the existence of the judgment until one week after it was rendered, do not establish good 'cause for not appealing within the time prescribed by law. The officer’s return upon the warrant, was made under his official oath, and is to be taken as true. If false, the only civil remedy is by an action against him for a false return. See McBee v. The State, Meigs, 133; McCully v. Malcolm, 9 Hum., 193; Ridgeway v. The Bank, 11 Hum., 525; Williams v. The State, 2 Sneed, 163.
3. It is alleged that the note, upon which the judgment was rendered, contains, upon its face, evidence that the contract was illegal and void. It is as follows:
“Gaedner’s, Dec. 9th, 1861.
Hine months after date, or as J. W. Barger’s horse earns the money in the cavalry of the C. S. A. army, we, or either of us, promise to pay Jno. A. Gardner, or bearer, ninety dollars, for a horse this day sold by him to said Barger for cavalry service. J. W. Bahger.
H. C. McOutchen.”
*672 It is not alleged that this note was made elsewhere than within the lines of the Confederate army, and its date and subject-matter conclusively show that it was so executed.
This court has so frequently held that such a contract was not illegal, that it is needless to refer to the numerous cases we have decided. The position assumed by defendant’s counsel, that the note was payable in Confederate Treasury notes, because it was payable in nine months, or as Bar-ger’s horse earned the money in the cavalry service of the Confederate States army, is untenable. The note contains the words “ money ” and “ dollars,” and does not provide for a payment in Confederate notes; but, if it did, the contract was not illegal, and it is not alleged in the petition, or otherwise shown, that such notes were, when the note became due, of less value than gold or silver or United States Treasury notes. The true construction of the contract is, that the note was payable, absolutely, at the end of nine months from date, bpt would fall due, at an earlier period, if the horse earned the money; it being contemplated that compensation would be allowed the owner of the horse for the use of the horse in the Confederate service.
4. It appears that the motion to dismiss was made at the third term after the return of the writ of certiorari and supersedeas, and the failure to enter the motion, at the first term, would, unquestionably, furnish good cause for overruling the motion but for the fact that there is nothing in *673 tlie record to show that the plaintiff had any notice that the writs of certiorari and supersedeas had been granted before he entered his appearance by making the motion. The record shows that the constable was properly commanded, in the w-rit of .supersedeas, “ to notify the plaintiff that the record in said suit is removed into the Circuit Court of "Weakley county, by. writ of certiorari, returnable on the second Monday in February nest,” etc.; ■ but the return of the officer shows only that he made the contents known to the constable who had the execution in his hands. This was insufficient. The plaintiff was .entitled to notice of the removal of the cause into the circuit court, and his motion was in time when made at the term of his appearance. See Code, 3132, and McDowell v. Kellar, 1 Heis., 452.
5. If permissible at all, a second petition for writs of certiorari and supersedeas should be granted with great caution, and only under extraordinary circumstances; and we hold, that the inability to give security for the writ of supersedeas is not within the meaning of the rule. See Williams v. Greer, Cooper’s 4 Hay., Tenn. R., 387; Welch v. Harmon, 8 Yer., 109-111.
6. The judgment of the circuit court will be reversed, and judgment rendered here against the petitioner and his security for the amount of the Justice’s judgment, with interest thereon at the rate of six per cent, per annum from the date of the judgment, and all costs.